**Bradley S. MARCHANT, Plaintiff,**

**v.**

**U.S. COLLECTIONS WEST, INC., et al., Defendants.**

**No. CIV.96–2723PHXRCB(WKU).**

United States District Court, D. Arizona.

June 17, 1998.

Floyd W. Bybee, Tempe, AZ, for Plaintiff.

William W. Holder, Phoenix, AZ, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

URBOM, Senior District Judge.

The plaintiff, Bradley Marchant, brought suit alleging violations of the Fair Debt Collection Practice Act [FDCPA], 15 U.S.C. §§ 1692–1692o. The defendants, U.S. Collections West, Inc., and Dorothy Darnell, moved for summary judgment on two issues. The plaintiff responded to that motion and made a cross-motion for summary judgment. For the following reasons, I will grant in part and deny in part the plaintiff's motion, and I will deny the defendants' motion in toto.

## I. FACTS

The parties have stipulated to the following facts solely for resolution of this motion.

1. Plaintiff Bradley S. Marchant is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

2. Defendant U.S. Collections West, Inc., is an Arizona collection agency, license number 007027.

3. Defendant Dorothy L. Darnell is an officer of U.S. Collections West, Inc., and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

4. In or about 1995, Marchant entered into an apartment lease with Sun King Apartments in Scottsdale, Arizona.

5. Marchant defaulted on his lease with Sun King Apartments.

6. Thereafter, Sun King obtained a judgment against Marchant.

7. Sun King assigned the judgment to U.S. Collections West, Inc., for collection purposes only.

8. U.S. Collections West, Inc., and Dorothy L. Darnell acted in concert with and on behalf of one another.

9. On or about January 23, January 30, March 4, and June 12, 1996, defendants mailed or caused to be mailed four letters to Marchant regarding the debt, copies of which are attached to the Complaint as Exhibits A–D.

10. Exhibits A–D attempted to collect different amounts from Marchant.

11. The figures set forth in Exhibits A–D are accurate communications of the figures given defendants by Sun King Apartments.

12. On or about June 24, 1996, defendants filed with the Scottsdale Justice Court an Application for Writ of Garnishment of Marchant's earnings along with an assignment from Sun King Apartments assigning Marchant's debt to U.S. Collections West, Inc., to "enforce collection of the amount." The amount set forth in said assignment is $832.80.

13. The total amount of the judgment entered by Scottsdale Justice Court in favor of Sun King Apartments and against Marchant was $702.77.

14. Dorothy L. Darnell is not licensed to practice law in the state of Arizona.

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505 (citations omitted).

## III. LEGAL ANALYSIS

Both parties have submitted motions for summary judgment, and their arguments may overlap somewhat. Rather than decide their motions separately and repeat my reasoning, then, I have addressed all of their claims in this order. For efficiency and clarity, I have grouped the claims together and addressed each party's arguments within those claims.

### A. Bona Fide Error Defense

First, the defendants take issue with paragraph 15 of the plaintiff's complaint, which alleges that the letters sent to the plaintiff by the defendants show different numbers for the "amount placed" and the "judgment balance." Unsure of which section of the FDCPA these facts were meant to substantiate, the defendants presumed the plaintiff intended to allege a violation of § 1692e, which prohibits debt collectors from falsely representing the amount of a debt in order to collect a debt. The defendants argue, though, that the "bona fide error" exception of § 1692k(c) relieves them from any liability under § 1692e. The bona fide error exception applies "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To support their position, the defendants have submitted the affidavit of defendant Dorothy Darnell, in which she states that all of the money figures stated in the letters were accurate based on the information given to U.S. Collections West by Sun King Apartments.

In response, the plaintiff agreed that his allegations do not state a cause of action under § 1692e. Instead, he asserts that he intended to allege a cause of action under § 1692g. Section 1692g addresses what notice is required to be given to a debtor by a collection agency. Specifically, § 1692g states as follows:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

. . . . .

I am unsure how reliance on 1692g, as opposed to 1692e, rebuts the defendants' argument, since the bona fide error exception

applies to the entire FDCPA and would prevent liability under § 1692g as well as § 1692e. However, despite this hole in the plaintiff's argument, I find that the defendants' motion for summary judgment on this issue should be denied, because genuine issues of material fact remain as to whether the bona fide error exception should apply in this case. The bona fide error exception applies only if the collector establishes the maintenance of procedures reasonably adapted to avoid the error that occurred. *See Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1514 (9th Cir.1994). The defendants have produced no evidence showing that such procedures were in place. "In the absence of any evidence supporting the existence of 'reasonable preventive procedures,' an essential element of the bona fide error exception, [the defendants are] not entitled to summary judgment on the basis of the affirmative defense." *Id.*

## B. Whether Dorothy Darnell's Signing of Application for Writ of Garnishment Violated § 1692e(5)

■ · The plaintiff has alleged that Dorothy Darnell's application for a writ of garnishment violated § 1692e, because Darnell is not authorized to practice law in Arizona. The relevant portions of § 1692e are as follows:

**§ 1692e. False or misleading representations**

· A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

· · · · ·

(5) The threat to take any action that cannot legally be taken . . . .

15 U.S.C. § 1692e(5). According to the plaintiff, Dorothy Darnell was not legally able to make an application for a writ of garnishment, because she is not licensed to practice law; therefore, the application for the writ was the threat of action that she could not legally take.

Both parties have moved for summary judgment on this issue. In their motion for summary judgment, the defendants argue that the signing of the application for writ of garnishment did not constitute the unauthorized practice of law. Alternatively, the defendants argue that the act of filing the application was not a "threat" within the meaning of the act.

First, the defendants assert that Darnell did not sign any "pleading" as that term is defined in Rule 7(a) of the Arizona Rules of Civil Procedure or the Federal Rules of Civil Procedure. Rather, the defendants argue, she signed only a post-judgment application, which does not constitute the unauthorized practice of law. As support for this proposition, the defendants direct my attention to *LeDoux v. Credit Research Corporation,* 52 Cal.App.3d 451, 125 Cal.Rptr. 166 (1975), and *New England Capital Corp. v. Finlay Co.,* 137 N.H. 226, 624 A.2d 1358 (1993). However, the defendants have misread the holdings of both cases and have overstated their significance in the matter presently before me.

According to the defendants, the *LeDoux* case establishes that a non-lawyer/collector may represent himself or his collection agency in court by signing pleadings. The *LeDoux* court made no such blanket holding, though. Rather, the court found that a collections agency, when it has been assigned a creditor's claim, is the "real party in interest" when it sues to collect that debt. Thus, the collections agency is not representing the original creditor's interests in a way that overreaches into the practice of law; it represents solely its own interests as assignee. In fact, contrary to the defendants' interpretation of the case, the court quoted with approval the following language from an earlier California case, the emphasized portion of which shows that the court never intended its holding to allow collector/assignees to appear without attorney representation:

The assignee merely contracts to file suit in his own name, if necessary to make the collection. But he does not agree to furnish any legal services whatever to the assignor. *The assignee employs the attorney and controls his action . . . .* Provided the assignment is absolute, so as to vest apparent legal title in the assignee, the latter is entitled to use in his own name. . . . In the case now before us, * * * we find that the plaintiff was not practicing law . . . . Certainly, the plaintiff did not

agree to furnish to his assignor legal advice of counsel, nor to prepare legal instruments or contracts. Neither did the plaintiff agree to do or perform services in a court of justice for the assignor or to employ an attorney to perform such services for the assignor. *The services performed by the attorney were for the assignee alone,* who was the real party in interest and exercised entire control of the action, the assignor having no power to exercise any control whatsoever either over the action or *the attorney in the performance of his services.*

*LeDoux,* 125 Cal.Rptr. at 168 (quoting *Cohn v. Thompson,* 16 P.2d 364, 365, 366 (Cal.Super.1932)).[1] Later, the *LeDoux* court also notes the following, the emphasized portion of which establishes the defendants' misinterpretation of this case:

> [A]ppellants argue that the Legislature intended to change the law as stated by *Cohn* but the argument overlooks the fact that the amended section also provides that a collection agency may bring legal action on claims assigned to it if it *"appears by a * * * licensed attorney * * *."*

*LeDoux,* 125 Cal.Rptr. at 169 (cites omitted).

Next, the defendants assert that the *New England Capital* case establishes that a corporation's president may appear in court matters on the corporation's behalf without "practicing law" illegally. Such finding, taken at face value, might appear to support the defendants' case; when the case is analyzed more thoroughly, though, it clearly is of use only in New Hampshire. The New Hampshire District and Municipal Court Rule 1.3(D) allows a non-lawyer "of good character" to appear on behalf of another if "there is on file with the Clerk a properly executed power of attorney signed by the party for whom the person seeks to appear." *New England Capital,* 624 A.2d at 1359 (quoting NEW HAMPSHIRE DISTRICT & MUNICIPAL COURT RULE 1.3(D)). This case, then, is purely an interpretation of New Hampshire's law on

appearances in court by a non-lawyer. It has no application to the present case, which, naturally, is governed by Arizona law.

In Arizona, the boundaries of when a layperson "practices law" are not clearly illuminated. Prior to 1985, the Arizona Revised Statutes contained provisions prohibiting the practice of law by unlicensed persons. *See generally,* ARIZ. REV. STAT. ANN. Title 32, Chapter 2 (Repealed). However, the entire title governing attorneys at law was repealed, effective January 1, 1985. Now, the practice of law is governed by the Arizona Supreme Court Rules. Specifically, Arizona Supreme Court Rule 31(a)(3) states as follows:

> Privilege to Practice. Except as hereinafter provided in subsection 4 of this section (a),[2] no person shall practice law in this state or hold himself out as one who may practice law in this state unless he is an active member of the state bar, and no member shall practice law in this state or hold himself out as one who may practice law in this state, while suspended, disbarred, or on disability inactive status.

ARIZ. SUPREME COURT RULE 31(a)(3).

The defendants argue that the supreme court rules govern only attorneys in Arizona, not laypersons, and, therefore, the rule lacks the force and effect of the now-repealed state statute prohibiting the unauthorized practice of law. Arizona courts, though, have found that Arizona Supreme Court Rule 31 applies to laypersons. *See Anamax Mining Company v. Arizona Dep't of Economic Security,* 147 Ariz. 482, 711 P.2d 621, 623 (1985) (affirming administrative finding that layperson employee could not represent company). Furthermore, Rule 31 trumps statutory law, because "the practice of law is a matter within the exclusive authority of the judiciary. ... The Arizona Supreme Court has the authority to determine who shall practice law and under what conditions." *Id.* at 624 (finding the supreme court rule gov-

---

**1.** In a similar case, the court of appeals in Arizona also cited this portion of the *Cohn* opinion with approval. *See Cruz v. Lusk Collection Agency,* 119 Ariz. 356, 580 P.2d 1210, 1214 (1978).

**2.** The only exception in subsection 4 that could apply in this case is subsection (a)(4)(C), which

allows an officer of a corporation who is not an active member of the Arizona bar to represent the corporation before a justice court if certain other requirements are met. However, this subsection expressly does not apply to assignments made for a collection purpose. ARIZ SUPREME COURT RULE 31(a)(4)(C).

erned whether employee of corporation could represent corporation in proceeding, even when state statute allowed "[a]ny corporation [to. be] represented by an officer or an authorized representative") (cites omitted).

■ However, the question remains whether the act of filing an application for a writ of garnishment constitutes the "practice of law." The Arizona Supreme Court has defined the "practice of law" generally as "those acts, whether performed in court or in the law office, which lawyers customarily have carried on from day to day through the centuries." *State Bar of Arizona v. Arizona Land Title & Trust Co.*, 90 Ariz. 76, 366 P.2d 1, 9 (1961) (en banc), *reh'g denied*, 91 Ariz. 293, 371 P.2d 1020 (1962). The touchstone for this determination is "reliance by the client on advice or services rendered, rather than the fact that compensation is received." *Id.* Such situations include "the preparation for another of matters for courts," and the drafting of instruments "purporting to create legal rights or impose legal responsibilities as between third parties." *Id.* at 14, 15.

Although I have located no Arizona state authority directly addressing whether filing for a writ of garnishment is the practice of law, the plaintiff has directed me to a recent decision in the United States District Court for the District of Arizona that so found. In *Holder v. U.S. Collections West*, CIV 96-2746 PHX (D.Ariz. May 5, 1998) (slip opinion), Judge Rosenblatt found that defendant Darnell practiced law illegally by filing an application for garnishment. *Id.* at 6. This decision is in agreement with other states' decisional law on this issue. *See In re Incorporated Consultants*, 6 Ohio Misc. 143, 216 N.E.2d 912 (Ohio Com.Pl.1975) (finding the following to be unauthorized practice of law by a corporation rendering collection services: filing petitions, affidavits in aid of attachment, aids in execution, court praecipes for levies, and certificates of judgment for liens); *Yount v. Zarbell*, 17 Wash.2d 278, 135 P.2d 309 (1943) (finding collection agency was practicing law when it prepared complaints and writs of garnishment for use in subsequent litigation and presented them to attorney to sign). I think that, given this persuasive precedent and the broad definition of "practicing law" in Arizona, Dorothy Darnell's act of signing the application for

the writ of garnishment fell within the realm of legal practice.

Next, the defendants argue that, even if such action was the unauthorized practice of law, it did not violate § 1692e(5) of the FDCPA. That section prohibits the use of a "threat" to take "action that cannot legally be taken.". The defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority, as opposed to *threatening* to act where it has no legal authority, would defy the very purposes of the section, one of which is to prevent "use of ... false ... means in connection with the collection of any debt." 15 U.S.C. § 1692e. *See also Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 350–51 (5th Cir.1997) (finding that act of filing suit was violation of subsection e(5)).

■ Finally, in the Ninth Circuit, the "least sophisticated debtor" standard applies to subsection e(5). *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir.1988). Thus, the only remaining question is whether the least sophisticated debtor would have construed the writ of garnishment as a threat to take action that could not legally be taken. There is no question that the filing of the application for garnishment fulfills this low standard. This is not a case where minds could differ as to whether the collector would take action; the collector *had taken* action.

Because no genuine issues of material fact remain as to this issue, then, summary judgment will be entered in the plaintiff's favor on this claim.

**C. Whether the Filing of the Application for Garnishment Falsely Represented that Dorothy Darnell is an Attorney in Violation of § 1692e(3)**

■ Section 1692e(3) prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney." The plaintiff argues that he is entitled to summary judgment because Dorothy Darnell's filing of the application for the writ of garnishment con-

stituted a false implication that Darnell was an attorney. For the reasons stated in the previous section, I agree. *See Holder v. U.S. Collections West,* slip op., at 6 (finding same). Summary judgment shall be granted for the plaintiff on this issue.

### D. Whether the Defendants' Conduct Was Oppressive and Harassing in Violation of § 1692d

Section 1692d prohibits engaging in conduct "the natural consequence of which is to harass, oppress, or abuse" a debtor. The plaintiff has argued that he is entitled to summary judgment on this claim because the defendants, "absent any legal authority whatsoever, haled Plaintiff into the Scottsdale Justice Court." (Plaintiff's brief, at 8). The burden is on the plaintiff in this situation to show that no genuine issue of material fact exists on this issue, and I find that he has not carried that burden. A factual issue remains on the issue of whether the defendants' conduct was harassing, oppressive, or abusive. As such, the issue will be left to the jury.

**IT IS THEREFORE ORDERED** that

(1) the defendants' motion for summary judgment, filing 27, is denied;

(2) the plaintiff's cross-motion for summary judgment, filing 29, is granted for the claims that the defendants violated 15 U.S.C. § 1692e(5) and § 1692e(3) when Dorothy Darnell signed the application for the writ of garnishment. In all other respects, the plaintiff's cross-motion for summary judgment, filing 29, is denied.